Dawn L. Davis, Esq.
Nevada Bar No. 13329
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: ddavis@swlaw.com

Jonathan P. Hersey, Esq.
(*pro hac vice forthcoming*)
Lea E. Gierut, Esq.
(*pro hac vice forthcoming*)
K&L GATES LLP
1 Park Plaza, 12th Floor
Irvine, California 92614
Telephone: (949) 253-0900
Facsimile:  (949) 253-0902
Email: jonathan.hersey@klgates.com
          lea.gierut@klgates.com

*Attorney for Defendants John Duff III,*
*Henry Smith, and Maxwell Roux*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KRISHNA OKHANDIAR, an individual, and REMILIA CORPORATION LLC, a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>JOHN DUFF III, an individual, HENRY SMITH, an individual, and MAXWELL ROUX, an individual,<br><br>    Defendants. | Case No. 2:23-cv-1409- APG-EJY<br><br>**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) & 12(b)(3), OR ALTERNATIVELY TO TRANSFER PURSUANT TO 28 U.S.C. §§ 1406(a) OR 1404(a)** |

Defendants *John Duff III ("Duff"), Henry Smith ("Smith"), and Maxwell Roux ("Roux,"* and collectively with Duff and Smith, "Defendants") move the Court to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or alternatively to dismiss pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406 because venue is improper in this District. If dismissal is not granted, then the action should be transferred to the

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

District Court for the District of Delaware in the interests of justice and for the convenience of the parties and witnesses pursuant to either 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).

## I. INTRODUCTION

Plaintiff Krishna Okhandiar ("Okhandiar"), the sole member of the other plaintiff Remilia Corporation LLC, a *Delaware* company ("Remilia"), recently moved to Nevada. (Complt. ¶¶ 1-3.) That, however, is the only connection between this jurisdiction and any Defendant or fact relevant to this case. Of course, a plaintiff's voluntary place of residence is irrelevant to a court's exercise of jurisdiction over non-resident defendants. The focus is on the extent of the defendants' connections, if any, to the forum state. Here, there are none.

Plaintiffs do not assert a basis for an exercise of general jurisdiction; nor could they. None of the Defendants are residents of Nevada, and none have ever owned any property here. They are, respectively, citizens of New York, Montana, and New Zealand. (Complt. ¶¶ 4-6.) With the exception of a single, brief and completely unrelated personal visit to Las Vegas *before* the parties even contemplated doing business together, none of the Defendants has ever even visited Nevada, much less conducted any business here. They are certainly not "domiciled" in this state.

Likewise, no ground exists for an exercise of specific jurisdiction. None of the Defendants negotiated or signed any of the alleged contracts in Nevada. While the Complaint avers that Remilia's principal place of business is in Okhandiar's home at 89 Arthur Hills Court in Las Vegas (Complt. ¶ 2), that allegation is not just disingenuous, it is insufficient to prove jurisdiction over the Defendants. Okhandiar did not register his home address as Remilia's place of business until November 15, 2023, more than two months after filing this Complaint[1] and after the Defendants had already filed their own lawsuit against him and Remilia in Delaware.[2] Defendants did not know that Okhandiar had had moved to Nevada until he filed the Complaint. None of the work that he alleges they performed as "independent contractors" for the company and none of the acts he alleges

---

[1] *See* Remilia Corporation LLC Entity Information report printed from SilverFlume Nevada's Business Portal, https://esos.nv.gov/EntitySearch/BusinessInformation [last accessed 1/12/2024], attached as Exhibit 1 to the Declaration of Jonathan P. Hersey (hereinafter "Hersey Decl.").

[2] *See* Hersey Decl. ¶ 2; *Roux, et al. v. Okhandiar, et al.*, Court of Chancery of the State of Delaware, C.A. No. 2023-0961, filed Sept. 22, 2023, and removed to federal District Court for the District of Delaware, Case No. 1:23-cv-01056-GBW, on Sept. 27, 2023.

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

they committed in furtherance of his manufactured "conspiracy" occurred in or was purposefully directed at this state. (Complt. ¶ 10.) Indeed, the "virtual server" that Okhandiar alleges the Defendants wrongfully seized control of (*id.*) is not located in Nevada and was never accessed by any of them from Nevada. The mere fact that Okhandiar chooses to pay Remilia's invoices received from the New York-based virtual server hosting company from his home is not enough to demonstrate jurisdiction or proper venue over Defendants in this state.

All notions of due process, substantial justice and fairness dictate that the Complaint should be dismissed for lack of personal jurisdiction and improper venue. But even if the Court could exercise personal jurisdiction over Defendants, and even if it determines that venue could be proper here, the matter should still be transferred to the District of Delaware in the interests of justice and for the convenience of the parties and witnesses. Okhandiar chose to incorporate Remilia in Delaware. He has no problems conducting his businesses there and availing himself of its laws and protections. He should not be heard to complain about litigating there where a lawsuit involving the same parties and issues is already pending.

## II.  BACKGROUND AND JURISDICTIONAL FACTS

Plaintiffs' claims against Defendants arise from the parties' joint formation and operation of a crypto-based non-fungible token (NFT) art collective venture referred to as "Remilia."[3] According to the Complaint, Okhandiar is the sole owner and member of the Delaware company, Remilia Corporation LLC.  Complt. ¶¶ 2-3 & 12-13. While Plaintiffs admit that each Defendant had a "managerial role" with the company (*id.* ¶ 45), Plaintiffs allege that because they each "failed to perform at an adequate level," they were demoted to "individual contributor" roles and made to sign non-disclosure agreements. E.g., Complt. ¶¶ 19-20; 26-27, 34-35 & 45-46. The Complaint avers that Defendants breached their non-disclosure agreements with Remilia by disclosing the

---

[3] Defendants refute Plaintiffs' mischaracterization of Remilia as a company and whose assets are solely owned by Okhandiar. Based on the facts alleged with particularity and supported by a trough of supporting documents in their own pending lawsuit against these Plaintiffs in Delaware, Defendants were founders, shareholders and employees of the Remilia collective venture. For the purposes of this Motion, however, Defendants focus on the nature of Plaintiffs' exaggerated claims for relief and the paucity of factual allegations supporting an exercise of jurisdiction or proper venue in this Court.

company's plans to raise capital (e.g., *id.* ¶¶ 47-49 & 125-142), attempted to extort equity and compensation from Plaintiffs (*id.* ¶¶ 10, 110, 173, & 186), and conspired to "surreptitiously and wrongfully" seize control of certain of Remilia's NFT assets, social media accounts and codebases, and to interrupt its business. E.g., *id.* ¶¶ 10, 52-62, 69, 94, 97, 108, 120, 147-174 & 180-189.

Plaintiffs' "factual" allegations of jurisdictional are sparse and inappropriately conclusory at best, merely asserting that Defendants "purposefully directed their activities toward Nevada by … purposely agreeing to perform work as independent contractors for a business that conducts operations in Nevada, forming a conspiracy to seize control of virtual servers used for a business operating from Nevada and purchased by the business from Nevada, and furthering the goals of the conspiracy by causing extortive demands and communications about those demands to be sent to Remilia in Nevada. Complt. ¶ 10. Plaintiffs' venue allegation are worse, saying only that "a substantial part of the events giving rise to the claims occurred in this District." *Id.* ¶ 11. No facts support these claims.

As detailed further below in the Motion and in the Defendants' supporting declarations, Defendants have ***no*** connection whatsoever to Nevada, and particularly no connections with regard to the Remilia venture. Duff is a citizen and permanent resident of New York.[4] Smith is a citizen and permanent resident of New Zealand.[5] Roux is a citizen and permanent resident of Montana.[6] Defendants have never held any bank accounts or owned any personal or real property in Nevada. Duff Decl. ¶ 3; Smith Decl. ¶ 3; Roux Decl. ¶ 3. Even assuming Defendants acted as "independent contractors," which Defendants dispute, Defendants did not perform any activities or operations in Nevada, or otherwise have any contacts with or perform any services there. *See* Duff Decl. ¶¶ 3-4 & 16; Smith Decl. ¶¶ 3-4 & 14; Roux Decl. ¶¶ 3-4 & 12.

Remilia has always been a Delaware company. None of the assets Defendants are accused of having seized were located in Nevada (Duff Decl. ¶¶ 17-19 & Exhs. 1 & 2), and Defendants did not even know that Okhandiar had moved his home from Chicago to Las Vegas until after Plaintiffs

[4] Declaration of John Duff III ("Duff Decl.") ¶ 2.
[5] Declaration of Henry Smith ("Smith Decl.") ¶ 2.
[6] Declaration of Maxwell Roux ("Roux Decl.") ¶¶ 2 & 11.

filed this Complaint. Duff Decl. ¶ 16; Smith Decl. ¶ 14; Roux Decl. ¶ 12. That is why Defendants had sent their pre-litigation demand letter (which Plaintiffs' improperly attempt to conflate as unlawful extortion) to Okhandiar home in Chicago, Illinois and to Remilia's agent for service of process in Delaware. Complt. ¶¶ 89-90; Hersey Decl. ¶ 3.

None of the facts relate to and support an exercise of jurisdiction based on the alleged claims for relief, regardless of whether sounding in contract or tort. Defendants did not enter any agreement with Plaintiffs while in Nevada, or enter into agreements with the knowledge that Plaintiffs were citizens of Nevada. *See* Duff Decl. ¶¶ 5, 12, 16; Smith Decl. ¶¶ 6-7, 10, 14; Roux Decl., ¶¶ 5, 8, 13.

Plaintiffs did not seize any assets or accounts located in Nevada or by activities performed in Nevada or directed here. The virtual server hosting company, DigitalOcean, is a Delaware corporation with its principal place of business in New York, New York which provides a cloud based platform to store, develop, and host data. *See* Duff Decl. ¶¶ 17-18 & Exh. 1. It does not even have any servers located in Nevada. *See id.* at ¶ 19 & Exh. 2.

### III.

### LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) asks the court to dismiss an action over which it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The burden of establishing jurisdiction lies with the plaintiff. *See Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015). To avoid dismissal, the plaintiff must allege plausible facts demonstrating a *prima facie* basis for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (holding that conclusory allegations that defendants directed correspondence at the forum state are insufficient to establish *prima facie* grounds for jurisdiction).

Likewise, Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) authorize dismissal or transfer to a different federal district court "when venue is 'wrong' or 'improper.'" *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 53 (2013). Again,

the "[p]laintiff bears the burden of establishing proper venue," and the "court is not required to accept the pleadings as true and may consider facts outside the pleadings." *Jasper v. Martinez*, No. 217CV03026GMNVCF, 2018 WL 3997262, at *2 (D. Nev. Aug. 21, 2018) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).

Even if venue is proper under Rule 12(b)(3), the court may nevertheless exercise its discretion to transfer the case to a different federal district court where the case might otherwise have been brought, and "for the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a).

## IV.

## THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

A district court may only exercise personal jurisdiction over defendants who are "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). To satisfy that requirement, the court's jurisdiction over an out of state defendant must be consistent with both the forum state's long arm statute and the requirements of due process. *Walden v. Fiore,* 571 U.S. 277, 283 (2014).

Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with . . . the Constitution of the United States." Nev. Rev. Stat. §14.065 (2022); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) (holding that the reach and extent of Nevada's long arm statute is coterminous with the extent of personal jurisdiction permitted by Constitutional due process). Thus, to determine whether jurisdiction exists over Defendants in this case, the touchstone question is whether an exercise of jurisdiction "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464). Due process requires that a defendant have sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In this regard, constitutional jurisprudence has established two types of "minimum contacts"—those consistent and long-lasting enough to give rise to an exercise of general jurisdiction regardless of the nature of the asserted claim, and those less permanent but still

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

substantial and purposefully directed at the forum to support an exercise of specific jurisdiction with regard to the complaint's pleaded cause(s) of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15.

For the reasons discussed below, Plaintiffs have not and cannot meet their burden to demonstrate either general or specific jurisdiction over any of the Defendants.

**A.    Defendants Are Not Subject to General Jurisdiction in Nevada.**

Because general jurisdiction is a mechanism for exercising jurisdiction without regard to the specific claims for relief, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG*, *supra*, 571 U.S. at 137. With respect to individuals, general jurisdiction is appropriate only when a defendant is domiciled in the forum state. *Id.* Domicile is established by a physical presence in the state combined with intent to remain there. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48 (1989)).

Here, Plaintiffs concede that none of the Defendants are domiciled in Nevada. *See* ECF No. 1, ¶¶ 4-6. They are citizens and permanent residents of Montana, New York, and New Zealand, respectively. *See* Roux Decl. ¶ 2; Smith Decl. ¶ 2; Duff Decl. ¶ 2. An exercise of general jurisdiction over them would violate their federal and Nevada constitutional due process rights.

**B.    Defendants are not Subject to Specific Jurisdiction in Nevada.**

Because the Court lacks general jurisdiction, Plaintiffs "must demonstrate that [their] allegations establish a prima facie case for specific jurisdiction" over Defendants. *Fed. Trade Comm'n v. Consumer Defense, LLC*, 2018 WL 2741039, at *5 (D. Nev. 2018) (citing *Boschetto*, *supra*, 539 F.3d at 1015). When assessing specific jurisdiction, courts focus on "the relationship among the ***defendant***, the ***forum***, and the ***litigation***." *Walden*, *supra*, 571 U.S. at 283-84 (internal citations and quotations omitted; emphasis added). Because the "primary concern" is the burden that an exercise of jurisdiction will place on the defendant, the plaintiff's relationship to the forum and the defendant's relationship to the plaintiff or third parties are "an insufficient basis for jurisdiction." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017) and *Walden*, *supra*, at 286). Due process requires that a defendant may only be haled into foreign court based on his

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

own affiliation with the foreign state, not on "random, fortuitous, or attenuated" contacts the defendant makes by interacting with others affiliated with the state. *Burger King*, *supra*, 471 U.S. at 475 (internal citations omitted).

There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant:

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum;"
>
> (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities;" and
>
> (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "The plaintiff bears the burden of satisfying the first two prongs." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Only then does the burden shift to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (quoting *Burger King*, *supra*, 471 U.S. at 476–78).

A plaintiff's personal jurisdiction allegations may not be "merely conclusory, but must instead assert particular jurisdictional facts that establish the necessary ties" between the defendant and Nevada. *See Rueckl v. InMode*, *Ltd.*, No.: 2:19-cv-02186-KJD-NJK, 2020 U.S. Dist. LEXIS 132865, at *5 (D. Nev. July 27, 2020) (quoting Pocahontas First Corp. v. Venture Planning Group, Inc., 572 F. Supp. 503, 506 (D. Nev. 1983)). "Bare bones" assertion of minimum contacts or legal conclusions unsupported by specific factual allegations will not satisfy the plaintiff's burden. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). Moreover, the Court may not "assume the truth" of jurisdictional allegations in a complaint "which are contradicted by affidavit." *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

**1.      Defendants Have Never Purposefully Availed Themselves of the Privileges of Conducting Activities *in* Nevada, Nor Have They Purposefully Directed Wrongful Activities *at* Nevada.**

The first prong of the three-part test "minimum contacts" for specific jurisdiction contains

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

two considerations, namely whether the defendant has "purposefully availed" himself of the privileges of conducting activities *in* the state, or alternatively whether the defendant has "purposefully directed" the complaint's allegedly wrongful activities *toward* the state. The "purposeful availment" question is used to evaluate exercises of specific jurisdiction for contract claims. The "purposefully directed" question is used to evaluate exercises of specific jurisdiction for tort claims. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006). While Plaintiffs allege both contract and tort claims, they cannot satisfy their burden of making a *prima facie* showing of either requirement.

### a.    Plaintiffs' Allegations Fail the "Purposeful Availment" Test.

In contract cases, the inquiry for the first prong of the three-part minimum contacts test is "whether a defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Id.* (internal quotation marks, brackets, and citation omitted); *see also Burger King Corp.*, 471 U.S. at 473 ("[W]ith respect to interstate contractual obligations, ...parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950))).

The mere existence of a "contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto*, *supra*, 539 F.3d at 1017. "[T]he plaintiff must present evidence of the defendant's actions in the forum, such as the defendant executing or performing a contract there." *Davis v. Koontz*, No. 2:16-cv-01207-GMN-NJK, 2017 U.S. Dist. LEXIS 25517, at *9 (D. Nev. Feb. 23, 2017) (citation omitted). Courts examine the location of the parties' negotiations and course of dealing, the location of the parties' expected performance, and the location of the defendants' contemplated future contractual actions and consequences. *Burger King Corp.*, 471 U.S. at 479. The analysis "requires a finding that the defendant '[has] performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)).

Plaintiffs' conclusory and refuted allegations cannot support imposition of specific jurisdiction related to any of their contract-based claims. Plaintiffs do not and cannot allege that Defendants negotiated or signed any of the alleged agreements in Nevada. Nor can Plaintiffs allege that any of the Defendants' performance obligations were completed, required, or intended to be performed in Nevada. There were no courses of dealings in Nevada at all as to any contacts. And none of the agreements alleged in the complaint even mention the state of Nevada.

Roux has only been in Nevada one time, while passing through for two days on a road trip in 2019. Roux Decl. ¶¶ 4 & 13. That was before he had ever met Okhandiar and even began discussing the possibility of forming the NFT art-related venture. *Id.* ¶¶ 4-5; *see also* Complt. ¶¶ 34-35 (alleging that Roux was first retained as an "independent contractor" in 2022). In actuality, those discussions happened first in Chicago, Illinois in May 2021, then in New York City in November 2021, and then in Lisbon, Portugal and Warsaw, Poland in May 2022. *Id.* ¶¶ 5-8. Roux was in Poland in November 2022 when he received and signed a copy of the Non-Disclosure Agreement that Plaintiffs now accuse him of breaching. Complt. ¶ 36. His work related to the Remilia venture was performed from his home in Montana or in the various other locations described above, but never in Nevada. Roux Decl. ¶¶ 4-12. He was not aware that Okhandiar has supposedly moved to Nevada and claims this state as his permanent residence until after Plaintiffs filed this lawsuit. *Id.* ¶ 13.

Smith has *never* been to Nevada. Smith Decl. ¶¶ 3-4. He was living in his home country of New Zealand when he was first introduced to Okhandiar by chat and message applications in Spring 2021. *Id.* ¶ 6. Smith's permanent residence is in Auckland, but he was in Wellington, New Zealand in October 2021 when he received and signed a copy of a Letter of Intent from Okhandiar recognizing his position as a co-founder of the Remilia venture. *Id.* ¶ 7. At that time, Okhandiar was in Chicago, Illinois. *Id.* At various times from Fall 2021 until Spring 2023, Smith traveled to and performed work in furtherance of the venture in Lisbon, Portugal, New York City, Seoul, South Korea, and Tokyo, Japan. *Id.* ¶¶ 8-12. Smith was at his home in Auckland, and he believed Okhandiar was in Chicago, when he signed the Non-Disclosure Agreement that Plaintiffs' allege he breached. *Id.* ¶ 10. Like Roux, Smith did not learn that Okhandiar had moved from Chicago to

1    Las Vegas until after this lawsuit was filed. *Id.* ¶ 14.

2         Duff has only been to Nevada one time in December 2020 on a trip to Las Vegas to celebrate

3    a friend's birthday. Duff Decl. ¶ 4. He had previously met Okhandiar during college in Chicago,

4    Illinois. Okhandiar was living in Chicago when he also attended their same mutual friend's party

5    in Las Vegas. *Id.* Duff's permanent residence is in New York, but at various times from August

6    2021 to February 2022, he traveled to and spent time living in Chicago, near where Okhandiar

7    lived. *Id.* ¶ 6. In additional to meeting in group settings for social reasons, they occasionally met

8    in-person there to discuss the foundation of the Remilia venture and NFT projects. *Id.* It was not

9    until October 2021 when Okhandiar provided Duff with a so-called Letter of Intent in Chicago

10   recognizing Duff's role as a founder of the venture. *Id.* ¶ 7. Duff did not sign the LOI at that time,

11   but continued to work on the Remilia venture with Okhandiar in Chicago, and on a trip to New

12   York in November 2021, until February 2022 when Duff moved to and began splitting his time

13   between New York City and Szczecin, Poland. *Id.* ¶¶ 7-9. Duff met with Okhandiar, Roux and

14   Smith in Lisbon, Portugal in June 2022, and traveled to Warsaw, Poland in August 2022 to celebrate

15   the launch of one of the venture's projects. *Id.* ¶ 10-11. Duff was in Szczecin, Poland, and believed

16   that Okhandiar was in Chicago, in November 2022 when he received and began negotiating the

17   amended LOI and the NDA that Okhandiar now accuses him of breaching. *Id.* ¶ 12. Duff did not

18   sign the NDA and amended LOI until December 28, 2022, while he was still in Poland. *See* Complt.

19   ¶¶ 28 & 32. Okhandiar and Duff, along with Roux and Smith, then met again in April 2023 in

20   Tokyo, Japan to promote Remilia-Con 2023 before traveling to Jinju, South Korea for Okhandiar's

21   wedding. Duff Decl. ¶ 13. Like the other Defendants, Duff was not aware that Okhandiar had

22   moved from Chicago to Las Vegas until after Plaintiffs filed this lawsuit, and he has never done

23   any work in Nevada.  *Id.* ¶ 14.

24        The Complaint includes a single conclusory allegation that Okhandiar supposedly informed

25   Duff about his intention to form Remilia during the Las Vegas birthday party trip in December

26   2020. *See* Complt. ¶ 25 (alleging that "[i]n December 2020, Defendant Duff met with Okhandiar

27   in Nevada where he was first informed about Okhandiar's intentions to start Remilia and discussed

28   a potential position to perform work for Remilia.") That is simply not true. That trip was for a

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

birthday celebration for a mutual friend, and they never discussed forming Remilia or Duff's possible role with its creation. Duff Decl. ¶ 6. Those discussions did not begin until Spring 2021 in Chicago. *Id.* ¶¶ 5-6. Indeed, Plaintiffs' claim is also belied by the Complaint's other allegations that Okhandiar did not form the unincorporated Remilia venture until 2021 (Complt. ¶¶ 12 & 14), that Duff "began to perform work for Remilia" in 2021 (*id.* ¶ 26), and that Duff did not receive the LOI until October 2021 (Duff Decl. ¶ 7).

But even if true, the Complaint's allegation in paragraph 25 that Duff and Okhandiar first spoke about the possibility of creating the Remilia venture in December 2020 while they happened to be on an unrelated birthday party trip to Las Vegas is not sufficient to give rise to an exercise of specific jurisdiction. The Complaint conspicuously does not allege that a discussion was had about forming the company in Nevada or under Nevada law, or that the company would have offices there, or that Duff would be expected to move to and perform his services in Nevada. None of the work was ever performed in Nevada, and when Okhandiar finally incorporated Remilia nearly two years after that party, he did so (1) while he was living in Chicago, (2) under Delaware law and with a principal place of business in Delaware, and (3) while Duff was living in and traveling between New York and Poland. The fact that Duff and Okhandiar just happened to be in Las Vegas at that time is not a substantial enough connection to support of *prima facie* finding that Duff purposefully availed himself of the privilege of conducting business in this state. *Burger King Corp.*, *supra*, 471 U.S. at 475, n.18 ("random, fortuitous, or attenuated" contacts will not suffice.); *Axiom Foods*, 874 F.3d at 1070 ("While a single act can support jurisdiction, the act must first create[ ] a substantial connection with the forum. . . . Put differently, some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum." (quoting other sources)); *accord Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (no personal jurisdiction even though defendant made twenty-four (24) business trips to the forum).

Plus, that alleged one-time discussion between Duff and Okhandiar is certainly not evidence that Roux or Smith—who did not attend the party and who had not even met Okhandiar yet—have purposefully availed themselves of the privileges of conducting activities in Nevada.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

**b.** **Defendants Have Never Purposefully Directed Activities Here.**

Courts in the Ninth Circuit apply the three-part "*Calder* effects test" (*see Calder v. Jones*, 465 U.S. 783, 788-89 (1984)) to decide whether a defendant has purposefully directed activities toward the forum state for an exercise of jurisdiction involving alleged tort claims. This *Calder* effects test focuses on the harm allegedly caused by the defendant. To establish purposeful direction of wrongful activities toward a state, the plaintiff must show that the defendant "(1) commit[ed] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Best Odds Corp. v. iBus Media Ltd.*, No. 2:13-cv-02008-RCJ-VCF, 2014 U.S. Dist. LEXIS 76096, at *16-17 (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)). Plaintiffs fail to satisfy at least the second and third *Calder* factors.

The second factor—that the defendant's acts were expressly aimed at the forum state—focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Reflex Media, Inc. v. Successfulmatch.com*, No. 2:18-cv-00259-GMN-GWF, 2019 WL 1177962, at *7 (D. Nev. Mar. 11, 2019) (quoting *Axiom Foods*, 874 F.3d at 1070). It is not enough that the plaintiff can show that a defendant's conduct had foreseeable effects in the forum state. *See Zuffa, LLC v. Showtime Networks, Inc.*, No. 2:07-CV-00369RLHPAL, 2007 WL 2406812, at *8 (D. Nev. Aug. 17, 2007) (finding the plaintiffs failed to satisfy the "express aiming" requirement to confer specific jurisdiction, even though the defendant knew the plaintiff was based in the forum state because the knowledge was not enough to establish the defendants individually targeted the forum).

The third factor—that the defendant caused the harm intending it to be felt in the forum state—focuses on the defendant's knowledge. *See Harris Rutsky*, 328 F.3d 1122, 1131 (9th Cir. 2003). Again, it is not the plaintiffs contact with the forum state that drives the jurisdictional analysis. *Walden*, *supra*, 571 U.S. at 289 (reasoning that the court cannot attribute the plaintiff's contacts with the forum state to the defendant as such would make those connections "decisive" in the jurisdictional analysis). A plaintiff must show some degree of knowledge and intent by the defendant to cause harm in the forum state to ensure that "the *defendant's* actions connect him to

the forum." *Id.*

Here, Defendants did not know Plaintiffs were Nevada citizens or residents at any time before the Complaint was filed. Remilia is a Delaware company that did not register to do business as a foreign corporation in Nevada until more than two months after Plaintiffs filed the Complaint here. *See* Hersey Decl. ¶ 2 & Exh. 1. As far as Defendants knew, Okhandiar was always a resident of Chicago, Illinois. *See* Duff Decl. ¶¶ 5 & 16; Smith Decl. ¶¶ 6-7,10 & 14; Roux Decl. ¶ 13.

But even if Defendants had knowledge that Okhandiar considered Nevada to be his place of permanent residence at some time in the past several years, that knowledge is not enough to support an exercise of specific jurisdiction that Defendants targeted their conduct at this State. *See, e.g. Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir.2006) (the fact that the defendant once lived in the forum and therefore had knowledge of the plaintiff's golf resort went to the foreseeable effect prong of the effects test and was not an independent act that could be interpreted as being expressly aimed at the forum); *Schwarzenegger v. Fred Martini Motor Co*., *supra*, 374 F.3d at 807 (the fact that defendant may have known that plaintiff lived in the forum was insufficient to show express aiming at the forum).

The fact that Defendants may have corresponded with Okhandiar while he happened to be in Nevada is also not sufficient to satisfy the *Calder* effects test. "[U]se of [e]mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state," unless it creates some substantial connection there. *Picot v. Weston*, 780 F.3d 1206, 1213 (2015); *Edwards v. Juan Martinez, Inc.*, No. 2:20-cv-00570-JAD-EJY, 2020 U.S. Dist. LEXIS 174114, at *11 (D. Nev. Sep. 22, 2020) (noting that phone calls and emails and letters to the forum are insufficient to establish personal jurisdiction).

Likewise, Defendants' alleged use of social media platforms, including Instagram and Twitter, to market or otherwise promote the Remilia venture is not enough to establish specific jurisdiction here. *See Reflex Media, Inc. v. SuccessfulMatch.com*, No. 218CV00259GMNEJY, 2020 WL 8459143, at *5 (D. Nev. Dec. 29, 2020), report and recommendation adopted, No. 218CV00259GMNEJY, 2021 WL 240816 (D. Nev. Jan. 22, 2021) ("[N]o court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's

home state." (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997)); *Surface Supplied Inc. v. Kirby Morgan Dive Sys., Inc.*, No. C 13-575 MMC, at \*6 (N.D. Cal. May 29, 2013) ("Advertising in national publications or on Facebook and Twitter, however, is not sufficient to support a finding of purposeful availment").

Nor can Plaintiffs satisfy the *Calder* effects test requirements with the conclusory assertion that Defendants wrongfully accessed Remilia's virtual server and are supposedly holding its contents hostage. *See* Complt. ¶¶ 10, 15-17. That virtual server provider, DigitalOcean, is a third-party with no connection to Defendants or Nevada other than the fact that Okhandiar himself supposedly chooses to access the server and pay DigitalOcean's invoices to Remilia from his new home in Las Vegas. *Axiom Foods,* 874 F.3d at 1068 ("It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'"); *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co., Ltd.*, 828 F.2d 1439, 1443 (9th Cir. 1987). ("[T]he receipt of payment alone for services rendered outside the forum state is not sufficient to support personal jurisdiction."). DigitalOcean is not a Nevada citizen—it is a Delaware corporation with its headquarters in New York. Duff Decl. ¶ 18 & Exh. 1 (attaching DigitalOcean's 10-KA SEC filing). None of the DigitalOcean servers that Plaintiffs' complain Defendants have wrongfully access are located in Nevada. *Id.* ¶ 19 & Exh. 2 (attaching DigitalOcean's published list of server farm locations). Nor have Defendants ever accessed any of the virtual servers from Nevada. *See* Duff Decl., ¶¶ 4, 16, 20; Smith Decl. ¶ 4; Roux Decl. ¶¶ 4 & 13; *c.f. Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2017 WL 6539897, at \*7 (N.D. Cal. Dec. 21, 2017), 2017 WL 6539897, at \*7 ("The mere fact that [a third party]—the company that owns the servers—is headquartered in California is not enough to establish that [the defendant, a non-California citizen]... expressly aimed his alleged conduct at California.").

Plaintiffs' assertion that Defendants are subject to jurisdiction here because they have supposedly converted or stolen Remilia's crypto-funds or NFT art is also specious. Plaintiffs do not allege, much less demonstrate, that any of those allegedly misappropriated funds or art were ever present in Nevada, or that Defendants ever "seized" it while they or the property was in Nevada.  Indeed, the Supreme Court has flatly rejected such assertions of specific jurisdiction.

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

*Walden*, *supra*, 571 U.S. at 283-289. In *Walden*, the Supreme Court held that a Nevada court did not have personal jurisdiction over a Georgia police officer who seized money belonging to two airline passengers at a Georgia airport who were Nevada and California residents because the defendant's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly his conduct at plaintiffs whom he knew had Nevada connections." The Supreme Court noted that while defendant's conduct of seizing funds in Georgia had an effect on the plaintiffs in Nevada, that effect did not result from anything that independently occurred in Nevada and therefore was not a proper basis for jurisdiction.

Finally, Plaintiffs cannot establish jurisdiction by asserting that Defendants' pre-litigation demand letter was sent to them in Nevada. *See* Complt. ¶¶ 10 & 89-90(asserting that Defendants furthered the goals of their alleged conspiracy by "causing extortive demands and communications about those demands to be sent to Remilia in Nevada"). It was not. Defendants' demand letter was mailed to Okhandiar's and Remilia's last known address in Chicago, Illinois, and to Remilia's agent for service of process in Delaware. *See* Hersey Decl. ¶ 3. Defendants did not know, expect or intend the copy of the letter also sent by email to be viewed by Okhandiar in Nevada. And then even after receiving the letter and during pre-litigation discussions, Plaintiffs never informed Defendants that Plaintiff  now considered Nevada to be his place of permanent residence and that he would subsequently file a foreign company registration there for Remilia. Hersey Decl. ¶¶ 6-7. Plaintiffs' assertions, even if true, are too insignificant and attenuated to provide sufficient basis for an exercise of specific jurisdiction. *Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 37-38 (9th Cir. 1980) (finding no specific jurisdiction where defendant visited the forum on two occasions and knowingly mailed accusatory letters to plaintiff there).

### 2. Plaintiffs' Claims Do Not Arise Out of Defendants' Limited Nevada Activities.

The second "minimum contacts" factor considers whether the plaintiff's claim arises out of or relates to the defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. This means there must be an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes places in the forum State and is therefore subject to the State's

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

regulation. *See Bristol-Myers Squibb*, *supra*, 582 U.S. at 263.

For each of the reasons discussed above, Defendants' lack of any activities in Nevada except for as a road trip pass-through or attending a weekend birthday party in Las Vegas long before the parties even discussed the formation of Remilia cannot subject Defendants to specific personal jurisdiction here. *See Gunn v. Wild*, No. 2:17-CV-72 (JCM) (GWF), 2018 WL 473005, at *11 (D. Nev. Jan. 18, 2018) (finding the court lacked specific jurisdiction where defendant's contacts with Nevada from golf trips, trade shows, or management meetings were "best classified as 'random, fortuitous, or attenuated contacts,' and do not demonstrate that this court can exercise personal jurisdiction over claims unrelated to these contacts").

### 3. Exercising Jurisdiction over Defendants Would Be Unreasonable and Would Not Comport with Fair Play or Substantial Justice.

Even if a plaintiff meets the burden of establishing the first two prongs, which Plaintiffs here have not done, dismissal is still appropriate if the nonresident defendant presents a compelling case that the exercise of jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802; *Dole Food Co.*, *supra*, 303 F.3d 1117. For jurisdiction to be reasonable, it must comport with fair play and substantial justice. *See Burger King*, 471 U.S. at 476. "Reasonableness" comprises the weighing of seven factors: (1) the extent of the [defendant's] purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and, (7) the existence of an alternative forum. *Dole Food*, 303 F.3d at 1114; *see also Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) (holding no one factor is dispositive). All weigh in favor of dismissal.

Forcing Defendants to litigate in Nevada would create an extensive burden on Defendants. In a case such as this, in which "the defendant has done little to reach out to the forum state, the burden of defending itself in a foreign forum militates against exercising jurisdiction." *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987) (internal citation and quotation marks omitted); *See also Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995) ("Where

1  burdens are equal, this factor tips in favor of the defendants because the law of personal jurisdiction
2  is 'primarily concerned with the defendant's burden.'").

3    As discussed below, the more appropriate venue is Delaware. With regard to its sovereignty,
4  Delaware courts are extremely well versed in the ruled of corporate governance and formation of a
5  corporation formed in Delaware, and Delaware has an interest in enforcing its own laws. On the
6  other hand, Nevada's interest in adjudicating this dispute is minimal, and another forum is available
7  in Delaware where a lawsuit involving the same parties and facts is already pending. *See* Hersey
8  Decl. ¶ 9.

9    The importance of the forum to the Plaintiffs' interests is dwarfed by the importance of the
10  forum to Defendants. It would be hard to see Defendants having their effective day in court if this
11  is to be decided by a Nevada court. Delaware (or alternatively even New York or Illinois) have
12  more interest and more connection to the facts, witnesses and events giving rise to the dispute. The
13  only parties with any ties to Nevada whatsoever are Plaintiffs, who have only recently moved here.

14  **V.**

15  **THE COURT SHOULD DISMISS OR TRANSFER THE ACTION BECAUSE THE**
16  **DISTRICT OF NEVADA IS NOT THE PROPER VENUE**

17    Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) authorize dismissal of a
18  case "when venue is 'wrong' or 'improper.'" *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for*
19  *W. Dist. of Texas*, 571 U.S. 49, 53 (2013). Once a defendant challenges venue, the plaintiff bears
20  the burden of establishing its propriety. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d
21  491, 496 (9th Cir. 1979). When considering a motion to dismiss pursuant to Rule 12(b)(3), a court
22  need not accept the pleadings as true and may consider facts outside of the pleadings. *See Murphy*
23  *v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

24  **A. Venue is Improper under 28 U.S.C. § 1391.**

25    "When venue is challenged, the court must determine whether the case falls within one of
26  the three categories set out in §1391(b)." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 56. "If it does,
27  venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred
28  under §1406(a)." *Id.* Under, 28 U.S.C. § 1391(b) "[a] civil action may be brought in–

- 18 -

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28.U.S.C. 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in §1391(b)."

Consistent with the foregoing, Nevada is an improper venue.

First, this case does not fall within § 1391(b)(1) because all defendants are not residents of the State of Nevada. In fact, none of the Defendants are residents of this State. *See* Complt. ¶¶ 4-6; Duff Decl. ¶¶ 2-4; Smith Decl. ¶¶ 2-4; Roux Decl. ¶¶ 2-4.

Second, this case does not fall within § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims did not occur in Nevada. The crux of Plaintiffs' Complaint rests on a false narrative that Duff, Smith, and Roux acted as "independent contractors" whom Okhandiar accuses of extortion and breaching nondisclosure agreements that they were defrauded into signing with promises that they were cofounders, equity holders, directors and officers of the corporation. None of the parties were residents of Nevada when they negotiated and signed the alleged independent contractor non-disclosure agreements. Duff signed in December 2022, in Szczecin, Poland. Duff Decl. ¶ 12. Smith signed in November 2022, in Auckland, New Zealand. Smith Decl. ¶ 10. Roux signed in November 2022, in Warsaw, Poland. Roux Decl. ¶ 8. Okhandiar was not a resident of Nevada at the time, and all Defendants believed he was in Chicago, Illinois, where he lived. Of course, Plaintiff alleges that Remilia is a Delaware corporation, and was not even registered as a foreign company in Nevada until two months after it filed the Complaint. Hersey Decl. ¶ 2 & Exh. 1.

Lastly, 28 U.S.C. § 1391(b)(3) does not apply because Delaware is a proper district where with jurisdiction over Remilia (as a Delaware corporation) and Okhandiar (as its sole member), and

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

because all Defendants have already consented to jurisdiction there by having already filed the pending action in that District.

**B.      The Court Should Dismiss Rather Than Transfer.**

In deciding whether to dismiss or transfer, the court has some discretion; *i.e.*, it must find that transfer, rather than dismissal, is "in the interest of justice." 28 U.S.C § 1406(a). Although venue would be proper in the Delaware District Court, this Court should dismiss.

It is appropriate to dismiss rather than transfer where a plaintiff appears to be improperly forum shopping or purposefully attempting to prosecute the case in an improper venue. *E.g., Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983) ("Justice would not have been served by transferring Wood's claims back to a jurisdiction that he purposefully sought to avoid through blatant forum shopping."); *Johnson v. Payless Drug Stores Nw., Inc.*, 950 F.2d 586, 588 (9th Cir. 1991) (finding district court did not abuse its discretion in dismissing case where plaintiff disclaimed any intent to prosecute lawsuit in appropriate district); *Anaeme v. United States*, 2012 U.S. Dist. LEXIS 132457, at *4 (E.D. Wash. Sep. 17, 2012) ("it is not in the interests of justice to transfer an action that was obviously or deliberately filed in the wrong court."); *see also Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993) ("[T]he interest of justice is not served by allowing a plaintiff whose attorney committed an obvious error in filing the plaintiff's action in the wrong court, and thereby imposed substantial unnecessary costs on both the defendant and the judicial system.").

Here, Plaintiffs have engaged in obvious forum shopping. In response to Defendants' Demand Letter, Plaintiffs requested that Defendants not file suit or to go public about their claims while they prepared a response to Defendant's allegations and the parties considered mediation, and if necessary, a confidential and binding arbitration. *See* Complaint ¶ 90; Hersey Decl. ¶¶ 4-8. Despite multiple promises, Plaintiffs never provided that response and instead filed this preemptive suit here. *Id.* That is precisely the type of obvious and deliberate forum shopping that the transfer statute is not intended to protect. If Plaintiffs want, they can refile their complaint as counterclaims in the pending Delaware action.

Alternatively, if the Court does elect to transfer, the court should transfer to the District of

Delaware because (1) it is where action could have been brought, and (2) there is already a pending action in Delaware with substantially similar parties and surrounding similar facts. Hersey Decl. ¶ 9. In Delaware, unlike in Nevada, the district court has jurisdiction over the parties, and the venue is proper. *See Shapiro v. Bonanza Hotel Co.* 185 F2d 777, 780 (9th Cir. 1950) (finding that the action should be transferred under similar language in 28 USC § 1404(a)).[7]

The "first to file rule" does not change this analysis, and the Court should not keep the case here expecting the Delaware Court to dismiss or transfer instead. "Under [the first-to-file] rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars–Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997). However, the rule does not apply when there are circumstances of bad faith anticipatory suit and forum shopping as Plaintiffs have done here. *Alltrade, Inc. v. Uniweld Prod.*, Inc., 946 F.2d 622, 628 (9th Cir. 1991); *Inherent.com v. Martindale–Hubbell*, 420 F. Supp. 2d 1093, 1097-98 (N.D. Cal. 2006) ("In order for a court to find that the initial suit was anticipatory, the plaintiff in the first action must have been in receipt of specific, concrete indications that a suit by defendant was imminent."). By recognizing these exceptions to the first-to-file rule, courts seek to eliminate the race to the courthouse door in an attempt to preempt a later suit in another forum. *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998).

The Complaint concedes that its action was anticipatory after receiving Defendants' Demand Letter, which gave Plaintiffs "until 12:00 P.M. EDT, on August 25, 2023—less than 3 days—to respond Defendants' … demands." Complt. ¶ 90. After receiving Defendants' demand letter and then requesting that Defendants stand-down while Plaintiffs prepared a response and the parties considered mediation and arbitration, Plaintiffs merely baited Defendants into waiting to file in Delaware, where it rightfully should be. The first-to-file rule was never designed to reward a party who requests a party to hold off on filing an action and more time to respond to concrete and specific intent to sue letters, only to exploit that extended time to file an action first.

---

[7] A court may transfer an action under 28 USC § 1406(a) even though it lacks personal jurisdiction over the defendant. *Goldlawr, Inc. v. Heiman*, 369 US 463, 466 (1962).

## VI.

## ALTERNATIVELY, THE COURT SHOULD TRANSFER TO DELAWARE IN THE INTEREST OF JUSTICE AND CONVENIENCE OF THE PARTIES AND WITNESSES

Even if the court finds venue proper, it should still transfer the action under 28 U.S.C. § 1404(a) "for convenience of parties and witnesses and in the interest of justice." 28 U.S.C. § 1404(a). The factors relevant to the interests of justice are:

> "(1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof."

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Here, the interests of justice favor Defendants and a transfer to Delaware. Okhandiar formed Remilia as a Delaware LLC, an action is already pending there, and all parties are subject to jurisdiction there. The worst result would be two similar cases involving the same parties and claims in different venues, thereby risking inconsistent results and wasting judicial and party resources. This case should proceed, if at all, in a single venue where the Court is assured that it has jurisdiction over all litigants.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## VII.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety for lack of personal jurisdiction and improper venue. Alternatively, the Court should transfer the case to the District of Delaware where another case involving the same parties and issues of fact is already pending and the Court has jurisdiction over all parties.

DATED: January 18, 2024.                    SNELL & WILMER L.L.P.

By: */s/ Dawn L. Davis*
Dawn L. Davis, Esq.
Nevada Bar No. 13329
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

Jonathan P. Hersey (*pro hac vice forthcoming*)
Lea E. Gierut (*pro hac vice forthcoming*)
K&L GATES LLP
1 Park Plaza, Twelfth Floor
Irvine, California 92614

*Attorneys for Defendants John Duff III, Henry Smith, and Maxwell Roux*

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on January 18, 2024, I electronically filed the foregoing

3   **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) &**

4   **12(b)(3), OR ALTERNATIVELY TO TRANSFER PURSUANT TO 28 U.S.C. §§ 1406(a) OR**

5   **1404(a)** with the Clerk of Court for the U.S. District Court, District of Nevada by using the Court's

6   CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the

7   CM/ECF system.

8

9                                              */s/ Lyndsey Luxford*

10  4853-5705-2830                              An employee of SNELL & WILMER L.L.P.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 24 -